UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TEAMSTERS LOCAL 337,

Plaintiff/Counterclaim Defendant,

v.

Case No. 22-cv-12006
Honorable Linda V. Parker

SYSCO DETROIT, LLC,

Defendant/Counterclaim Plaintiff.
_______________________________________/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16) AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 15 )**

These matters are before the Court on the parties' cross-motions for summary judgment. The parties' claims stem from whether grievances for unpaid Supplemental Early Retirement Benefits ("SERB") are to be resolved in accordance with the procedures in their 2021 Collective Bargaining Agreement (the "2021 CBA") or their Corporation Retirement Plan (the "Retirement Plan").

Plaintiff Teamsters Local 337 (the "Union") brought this action against Defendant Sysco Detroit, LLC ("Sysco"), seeking a declaratory judgment that grievances filed on behalf of current Sysco retirees for SERBs are arbitrable under the parties' 2021 CBA. (ECF No. 11.) Sysco has filed a counterclaim, seeking its own declaratory judgment that these grievances are not arbitrable under the 2021 CBA. (ECF No. 5.)

The motions have been fully briefed. (ECF Nos. 15-19.) Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the following reasons, Sysco's motion is granted, and the Union's motion is denied.

## I. Legal Standard

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, "[t]he party opposing the motion must show that 'there is a genuine issue for trial' by pointing to evidence on which 'a reasonable jury could return a verdict' for that party." *Smith v. City of Toledo*, 13 F.4th 508, 514 (6th Cir. 2021) (alteration added) (quoting *Liberty Lobby*, 477 U.S. at 248). The non-movant's evidence generally must be accepted as true and "all justifiable

inferences" must be drawn in the non-movant's favor. *Liberty Lobby*, 477 U.S. at 255.

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011).

## II. Factual and Procedural Background

Prior to 2011, the parties' pension benefits were provided for through the Central States, Southeast and Southwest Area Pension Fund (the "Central States Fund"). (ECF No. 16 at Page ID. 679.) In 2011, the parties terminated their participation in the Central States Fund and began negotiations on a collective bargaining agreement. (*Id.* at Page ID. 679-80.) Since 2011, the parties have participated in three collective bargaining agreements: (1) the first from 2011 to 2016; (2) the second from 2016 to 2021; and (3) the instant agreement which became effective on February 7, 2021, and expires on February 7, 2027. (*Id*. at Page ID. 680-81.)

The Grievances

The Union argues that it filed two grievances regarding unpaid SERB . The first grievance alleges a violation of the 2021 CBA, while the second alleges a violation of a supplemental memorandum of understanding. Defendant argues that it never received the second grievance as it was never properly filed (*see* ECF No. 18 at Page ID. 1495); this issue, however, will not impact the Court's analysis. The Court will begin by examining the Union's grievances and will then examine both the 2021 CBA and the Retirement Plan.

i. The 2021 Grievance

On July 16, 2021, the Union filed a grievance alleging that Sysco has stopped paying SERBto qualified retirees (the "2021 grievance"). (ECF No. 4-4 at Page ID. 256.) The 2021 grievance reads, in relevant part, as follows:

> Article Violated: Article VIII Arbitration and Grievance Procedure
>
> Facts of the Case: Sysco Detroit has stopped paying additional $500 [per month] for qualified retirees between the ages of 55 [years and] 65 [years] of age. This additional money was offer[ed] to the members in 2011 [and] promised in exchange for leaving Central States Pension.
>
> Relief Requested: That all qualified retirees receive the extra $500 [per month] going forward [and] [r]etroactively to their retirement date.
>
> (*Id.* (alterations added).)

On August 27, 2021, in accordance with the grievance procedure of the 2021 CBA, the Union and Sysco met for a conference. (ECF No. 16-2 at PageID. 709-

10.) At the conference, Sysco denied the grievance, stating that: (1) it never agreed to arbitrate claims of retirees under the 2021 CBA's arbitration provision; and (2) any claim for SERB were to be provided for under the Retirement Plan and not the 2021 CBA. (*Id.* at Page ID. 710.)

ii. The 2022 Grievance

On March 28, 2022, the parties executed a Memorandum of Understanding ("MOU") with respect to SERB. (ECF No. 4-2 at Page ID. 80.) In relevant part, the MOU reads that:

> Regarding the Sysco Corporation Retirement Plan, the Company and the Union shall execute this Memorandum of Agreement stating that an eligible associate who retires on or after (date of ratification) shall be entitled to pension benefits in the 2011 labor negotiations, including the $500 a month Supplemental Early Retirement Benefits (SERB). Regarding retirees with retirement dates that precede (ratification date), the Union may file a class grievance on their behalf within 30 days after (ratification date) and the Company shall not challenge such grievance on the basis of timeliness.

(*Id.*) According to the second grievance, the MOU was ratified on July 10, 2022. (ECF No. 15-5 at PageID. 666.)

The Union alleges that on April 18, 2022, it filed a second grievance, asserting that Sysco is failing to pay SERB in violation of the MOU (the "2022 grievance"). (*Id.*) The 2022 grievance reads, in relevant part, as follows:

> Facts of the Case: Violation of MOU between Company and Local 337 for $500 a month Supplemental Early Retirement Benefit. This is an Et Al grievance to cover any union employee that has retired or will be retiring since the ratification of the contract. (7/10/22)

(*Id.*) As previously mentioned, Defendant states that it never received this grievance and disputes whether this agreement was ever properly filed. (*See* ECF No. 18 at PageID. 1495 (alterations added) ("[T]he [2022] 'grievance' does not reflect it was ever filed with or served upon the Company.").

The Agreements

i. The 2021 CBA

The 2021 CBA provides that "all grievances arising under and during the term of this Agreement shall be settled in accordance with the procedure provided." (ECF No. 4-1 at PageID. 43) It defines a grievance as "an alleged violation of the specific provision or article of this agreement." (*Id.*) Importantly, Article VIII § 2 of the 2021 CBA has a four-step procedure, which includes an arbitration provision, to address grievances brought by or on behalf of employees. (*Id.* at PageID. 44.)

The grievance procedure can be summarized as follows: (1) there will be a conference between the aggrieved employee, or shop steward, and the foreman of the employee; (2) the aggrieved employee shall reduce the grievance to writing for consideration during a grievance conference between the Union and Sysco, using the standard grievance form; (3) the Union and Sysco will conduct a grievance conference; and (4) in the event the grievance is not resolved, it shall be submitted to arbitration. (*Id.* at PageID. 44-45.)

Lastly, Article XVI § 2 of the 2021 CBA details the employees' eligibility to participate in the Retirement Plan, which is separate and distinct from the 2021 CBA, with its own terms and conditions. It directs that employees eligible to participate in the Retirement Plan shall participate in accordance with the terms of the Retirement Plan. (*See id.* at PageID. 50 (alterations added) ("Full time employees working on or prior to May 26, 2016 covered by this agreement will be eligible to participate in the Sysco Corporation Retirement Plan[.] . . . Participation shall be in accordance with the specific terms and conditions of [the Retirement] Plan.").)

ii. <u>The Retirement Plan</u>

The Retirement Plan includes the provision for SERB and contemplates that an eligible employee, who chooses to retire early, will receive a temporary monthly supplemental benefit of $500 per month. (ECF No. 4-3 at PageID. 113-15.) The Retirement Plan also has a provision allowing its members to dispute claims which reads, in relevant part:

> A Member or Beneficiary or the authorized representative thereof (each, a "Claimant") shall submit a claim for any benefits believed to be due, in accordance with the administrative rules of the [Retirement] Plan and to the individual or office designated by the Administrative Committee to receive such claims. A Claimant shall have no right to seek review of a denial of benefits, or to bring an action in any court to enforce a claim for benefits prior to filing a claim for benefits and exhausting his rights to review hereunder. A benefit under the Retirement Plan shall be paid only when the Administrative Committee

> decides in its discretion that the Member or Beneficiary is entitled to the benefit.

(*Id.* at PageID. 164 (alteration added).)

The Retirement Plan's procedures for review of the denial of claims and appeals are also provided for under this section. That procedure can be summarized as follows: (1) if the claim is denied, the claimant will be provided a notice of denial stating, among other things, the reason for the denial and information on the claimant's right to bring an action under the Employee Retirement Income Security Act ("ERISA"); (2) the claimant may then appeal the denial of his or her claim to the Administrative Committee; (3) if the appeal is denied, legal action against the Retirement Plan may commence no later than the earlier of the time provided for in the shortest applicable statute of limitations or two years after the date the Administrative Committee's denial was delivered to the claimant. (*Id.* at PageID. 164-67.)

<u>Parties' Arguments</u>

The parties now cross-move for summary judgment on the issue of whether these grievances are subject to the 2021 CBA's arbitration provision or the procedures under the Retirement Plan. (ECF Nos. 15, 16.) Sysco moves for summary judgment, arguing that: (1) the parties did not agree to arbitrate disputes relating to SERB under the 2021 CBA (*see* ECF No. 16 at PageID. 687); (2) the Union has not exhausted its administrative remedies within the Retirement Plan

(*see id.* at PageID. 697); and (3) the Union lacks standing to bring a grievance on behalf of the retirees as the Union has not obtained the consent of the retirees (*see id.* at PageID. 695).

In opposition, the Union argues that: (1) the parties intended to arbitrate pension benefits, including SERB benefits (*see* ECF No. 17 at PageID. 1482); (2) the grievances are not solely related to retirees (*see id.* at PageID. 1483); and (3) Sysco's arguments are more appropriate for arbitration (*see id.* at PageID. 1479).

More specifically, the Union moves for summary judgment, arguing that SERB disputes should be arbitrated pursuant to the grievance process described in the 2021 CBA. (ECF No. 15 at PageID. 562.) In opposition, similar to assertions in its own motion, Sysco argues that the Retirement Plan directs retirees to challenge a determination regarding their benefits—including SERB—by filing a claim with the Retirement Plan and appeal any adverse decision with the Retirement Plan, not the 2021 CBA. (ECF No. 18 at PageID. 1497.)

## III. Legal Analysis

"Interpretation of a collective bargaining agreement begins with the explicit language of the agreement." *Raceway Park, Inc. v. Local 47, Serv. Emp. Int'l Union*, 167 F.3d 953, 963 (6th Cir. 1999). Courts interpret collective bargaining agreements under "ordinary principles of contract law." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 430 ( 2015); *see also Rogers v. I.R.S.*, 822 F.3d 854,

860 (6th Cir. 2016) (citation omitted) ("The general rules of contract law require that courts interpret contracts according to their plain meaning, in an ordinary and popular sense.").

*i.* *Arbitrability Standard*

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986)). "If the collective bargaining agreement does not affirmatively provide for arbitration of a given type of grievance, the grievance simply is not arbitrable." *Salary Pol'y Emp. Panel v. Tenn. Valley Auth.*, 868 F.2d 872, 877-78 (6th Cir. 1989).

The issues presently before the Court—whether the grievances are subject to the arbitration clause of the 2021 CBA—are issues of substantive arbitrability. Substantive arbitrability is whether an issue is within the scope of an agreement's arbitration clause and must be submitted to arbitration. *Int'l Ass'n of Machinist & Aerospace Workers, AFL-CIO, Local Lodge 1943 v. AK Steel Corp.*, 615 F.3d 706, 709 n.1 (6th Cir. 2010) (citing *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 552 (1964)). Procedural arbitrability, on the other hand, is whether the

submission of the grievance that is subject to arbitration followed the proper procedures, including timeliness, to qualify for arbitration. *Id.* (citing *Livingston*, 376 U.S. at 556). Unless the parties provide otherwise, procedural arbitrability is determined by the arbitrator while substantive arbitrability is determined by the Court. *Id.* (citing *Livingston*, 376 U.S. at 558).

The Sixth Circuit has identified four principles for determining whether a grievance is subject to compulsory arbitration:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by contract to submit to arbitration; (2) unless the parties clearly and unmistakably provide otherwise, whether a collective bargaining agreement creates a duty for the parties to arbitrate a particular grievance is an issue for judicial determination; (3) in making this determination, a court is not to consider the merits of the underlying claim; and (4) where the agreement contains an arbitration clause, the court should apply a presumption of arbitrability, resolve any doubts in favor of arbitration, and should not deny an order to arbitrate 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'

*United Steelworkers of Am. v. Mead Corp. Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir. 1994) (quoting *AT&T Techs., Inc.,* 475 U.S. at 650).

*ii.* *The Grievances*

While the 2021 CBA contains an arbitration clause, it can be said with positive assurance that SERB disputes do not arise under its terms. The 2021 CBA specifically directs that participation in the Retirement Plan, which defines SERB, shall be in accordance with the terms of the Retirement Plan. (*See* ECF No. 4-1 at

PageID. 50.) Furthermore, a dispute over SERB would not meet the 2021 CBA's definition of a grievance, which is "an alleged violation of the specific provision or article of ***this*** agreement." (*Id.* at PageID. 43 (emphasis added).) Since the Retirement Plan, not the 2021 CBA, provide for SERB, a SERB dispute would be an alleged violation of the Retirement Plan, not the 2021 CBA.

As a result, the grievance procedure and arbitration clause provided for under the 2021 CBA are inapplicable to a dispute concerning SERB. The Retirement Plan has its own procedure for disputes regarding benefits, which the 2021 CBA directs participants follow. (*See id.* at Page ID. 50 (alterations added) ("Full time employees working on or prior to May 26, 2016 covered by this agreement will be eligible to participate in the Sysco Corporation Retirement Plan[.] . . . Participation shall be in accordance with the specific terms and conditions of [the] Plan.").) Moreover, the MOU states that Sysco merely waives a timeliness defense to a class grievance on a SERB dispute, it does not compel these disputes to be governed by the 2021 CBA. (*See* 4-2 at Page ID. 80 (alterations added) ("[T]he Union may file a class grievance on . . . behalf [of eligible associates] after (ratification date) and the Company will not challenge such grievance on the basis of timeliness.").)

Similarly, it makes no difference who the grievances are filed for, retirees or non-retirees, as the grievance procedure under the 2021 CBA does not apply to the

dispute for SERB. Thus, the Union's argument that the grievances are not solely related to retirees does not create a genuine issue of material fact as to the language of the 2021 CBA and SERB disputes, and whether the Retirement Plan or 2021 CBA would govern. As a result, both grievances are covered by the Retirement Plan, not the 2021 CBA.[1]

The Court will briefly address Sysco's exhaustion and standing arguments. First, Sysco's argument that the Union did not exhaust its administrative remedies is derivative of its argument that the Retirement Plan governs this dispute. Since the Retirement Plan governs, and the arbitration provisions under the 2021 CBA are inapplicable, the Union, and its members, must bring a claim pursuant to ERISA for unpaid SERB. Prior to bringing that claim however, they must adhere to the administrative requirements of the Retirement Plan as outlined above.

Second, addressing Sysco's argument that the Union lacks standing to bring grievances on behalf of retirees, even if the Union had standing, this would not

---

[1] Sysco argues that the 2022 grievance was never properly filed. (*See* ECF No. 19 at 1559; *see also* ECF No. 18 at PageID. 1495.) Sysco attaches the declaration of Michael Ketchup, Vice President of Operations at Sysco Detroit, LLC for support of its claim that it learned of the 2022 grievance when the Union moved for summary judgment. (ECF No. 19-2 at PageID. 1565-66.) The Union did not file a reply, nor did it offer any other form of rebuttal. The Court will not address this argument, as this raises issues of grievance procedure and procedural arbitrability, which are issues for an arbitrator, not the Court. *See Armco Emps. Indep. Fed'n v. AK Steel Corp.*, 252 F.3d 854, 859 (6th Cir. 2001) (alteration added) (emphasis in original) ("[C]ourts determine only *substantive* arbitrability while arbitrators determine *procedural* arbitrability.").

create a genuine issue of material fact as claims for unpaid SERB would still be disputed under the provisions of the Retirement Plan, not the 2021 CBA. Therefore, it makes no difference for whom the Union brings claims under the 2021 CBA because the 2021 CBA, and its arbitration provision do not apply. The Retirement Plan and its provisions are applicable.

For these reasons, Sysco is entitled to summary judgment as there is no genuine issue of material fact as to whether the 2021 CBA's arbitration provision applies to disputes over SERB.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Sysco is entitled to summary judgment with respect to its Counterclaim.

Accordingly,

**IT IS ORDERED** that Sysco's motion for summary judgment (ECF No. 16) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Union's motion for summary judgment (ECF No. 15) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 28, 2024